UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BRYANNA CLEGG,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>CAROLYN W. COLVIN, Acting Commissioner of Social Security<br><br>　　　　Defendant. | **1:13-cv-01476-GSA**<br><br>**ORDER REGARDING PLAINTIFF'S SOCIAL SECURITY COMPLAINT** |

**I.　INTRODUCTION**

　　Plaintiff Bryanna Clegg ("Plaintiff") seeks judicial review of a final decision by the Commissioner of Social Security ("Commissioner" or "Defendant") denying her application for supplemental security income ("SSI") and disability insurance benefits pursuant to Titles II and XVI of the Social Security Act. The matter is currently before the Court on the parties' briefs, which were submitted without oral argument to the Honorable Gary S. Austin, United States Magistrate Judge.[1]

---

[1] The parties consented to the jurisdiction of the United States Magistrate Judge. ECF Nos. 3, 8.

1

## II.   BACKGROUND AND PRIOR PROCEEDINGS[2]

At the time of her hearing, Plaintiff was 36 years old. AR 53, 163. She completed high school and two years of college and received an associate's degree. AR 213. Plaintiff worked as an office manager in a medical office from 2001 until December 2009. AR 186. She has not worked since December 31, 2009, the alleged onset date of her disability. AR 181. Plaintiff has two minor children who live with her. AR 634. Her daily routine consists of helping her children prepare for school, performing household chores, and making dinner for her children. AR 634. She also spends time watching television and sleeping. AR 634. Plaintiff is currently on probation for a 2009 arrest (and, presumably, conviction) related to the illegal use of prescription medication. AR 634. Plaintiff asserts that she has multiple sclerosis and seizure disorder. AR 185.

Her alleged physical symptoms include pain in her lower back and left leg, seizures, and cardiac irregularities. AR 60-63. She also asserts that she suffers from major depressive disorder and post-traumatic stress disorder. AR 78, 432. She currently takes a number of medications to manage her symptoms, including Xanax, Klonopin, Loratadine, Cymbalta, QVAR, Neurontin, Keppra, aspirin, Elavil, Abilify, Motrin, ProAir, Albuterol, Vicodin, SOMA, and marijuana. AR 432.

On May 5, 2010, Plaintiff filed her application for disability insurance benefits under Title II and supplemental security income under Title XVI. AR 163-164. Both applications alleged that her period of disability began on December 31, 2009. Both applications were denied initially on October 5, 2010 and on reconsideration on February 22, 2011. AR 113-117, 119-124. Plaintiff filed a request for a hearing on March 4, 2011. AR 125. The hearing was then conducted before Administrative Law Judge Judson Scott (the "ALJ") on September 19, 2011. AR 51-104. On March 2, 2012, the ALJ issued an unfavorable decision determining that Plaintiff was not disabled. AR 8-22. Plaintiff filed an appeal of this decision with the Appeals Council. The Appeals Council denied her appeal, rendering the order the final decision of the Commissioner. AR 1-6.

Plaintiff now challenges this decision, arguing that: (1) the ALJ inappropriately weighed

---

[2] References to the Administrative Record will be designated as "AR," followed by the appropriate page number.

the opinion of Beverly Barclay, Ph.D., a treating psychologist; and (2) the ALJ had a duty to develop evidence in connection with the opinion of the vocational expert.

## III.     THE DISABILITY DETERMINATION PROCESS

To qualify for benefits under the Social Security Act, a plaintiff must establish that he or she is unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment that has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § 1382c(a)(3)(A). An individual shall be considered to have a disability only if:

> . . . his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work, but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 1382c(a)(3)(B).

To achieve uniformity in the decision-making process, the Commissioner has established a sequential five-step process for evaluating a claimant's alleged disability. 20 C.F.R. §§ 404.1520(a)-(f) and 416.920(a)-(f). The ALJ proceeds through the steps and stops upon reaching a dispositive finding that the claimant is or is not disabled. 20 C.F.R. §§ 404.1520(a)(4) and 416.920(a)(4). The ALJ must consider objective medical evidence and opinion testimony. 20 C.F.R. §§ 404.1527, 404.1529, 416.927, 416.929.

Specifically, the ALJ is required to determine: (1) whether a claimant engaged in substantial gainful activity during the period of alleged disability, (2) whether the claimant had medically-determinable "severe" impairments,[3] (3) whether these impairments meet or are medically equivalent to one of the listed impairments set forth in 20 C.F.R. § 404, Subpart P, Appendix 1, (4) whether the claimant retained the residual functional capacity ("RFC") to perform his past relevant work,[4] and (5) whether the claimant had the ability to perform other jobs

---

[3] "Severe" simply means that the impairment significantly limits the claimant's physical or mental ability to do basic work activities. *See* 20 C.F.R. §§ 404.1520(c) and 416.920(c).

[4] Residual functional capacity captures what a claimant "can still do despite [his or her] limitations." 20 C.F.R. §§ 404.1545 and 416.945.  "Between steps three and four of the five-step evaluation, the ALJ must proceed to an

3

existing in significant numbers at the regional and national level. 20 C.F.R. §§ 404.1520(a)-(f) and 416.920(a)-(f).

Using the Social Security Administration's five-step sequential evaluation process, the ALJ determined that Plaintiff did not meet the disability standard. AR 9-29. In particular, the ALJ found that Plaintiff had not engaged in substantial gainful activity since March 25, 2009, the date specified in her application. AR 14. Further, the ALJ identified degenerative disc and joint disease of the back, chronic bilateral L4-L5 radiculopathy, moderate depressive disorder, and post-traumatic stress disorder as severe impairments. AR 13. Nonetheless, the ALJ determined that the severity of Plaintiff's impairments did not meet or exceed any of the listed impairments. AR 14.

Based on a review of the entire record, the ALJ determined that Plaintiff has the RFC to perform light work as defined in 20 C.F.R. § 404.1567(b) and 416.967(b) except that she could not climb ladders, ropes, or scaffolds; could not work in unprotected heights or around hazardous moving machinery; could engage in simple repetitive one to three step tasks; could have frequent interaction with co-workers, supervisors, and the public; and could work in a low stress occupation—meaning few changes in work or setting and with little decision making required. AR 16. Although the Plaintiff cannot perform her past relevant work, she could perform other work that exists in the national economy. AR 20.

## IV.   STANDARD OF REVIEW

Under 42 U.S.C. § 405(g), this Court reviews the Commissioner's decision to determine whether: (1) it is supported by substantial evidence; and (2) it applies the correct legal standards. *See Carmickle v. Commissioner*, 533 F.3d 1155, 1159 (9th Cir. 2008); *Hoopai v. Astrue*, 499 F.3d 1071, 1074 (9th Cir. 2007).

"Substantial evidence means more than a scintilla but less than a preponderance." *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002). It is "relevant evidence which, considering the record as a whole, a reasonable person might accept as adequate to support a

---

intermediate step in which the ALJ assesses the claimant's residual functional capacity." *Massachi v. Astrue*, 486 F.3d 1149, 1151 n. 2 (9th Cir. 2007).

conclusion." *Id.* "Where the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." *Id.*

## V. DISCUSSION

### A. The Relevant Medical Evidence

Plaintiff argues that the ALJ improperly considered the medical evidence and thus erroneously determined that Plaintiff was not disabled. Specifically at issue is the ALJ's consideration of the opinion of Beverly Barclay, Ph.D., Plaintiff's treating psychologist. The parties do not contest the ALJ's assessment of the physicians who treated or provided examinations with respect to Plaintiff's physical condition (as opposed to her psychiatric condition). Accordingly, only the mental health experts will be discussed here.

#### *i. Beverly Barclay, Ph.D.[5]*

Dr. Barclay treated Plaintiff and saw her approximately six different times between January 2011 and July 2011. AR 483, 486, 490, 501, 511, 512. In her initial visit with Plaintiff, Dr. Barclay reported that Plaintiff was "anxious and depressed" and that she was confined to a wheelchair due to her multiple sclerosis. AR 512. Plaintiff told her that she had "consistent flashbacks" of instances where she was a victim of child sexual abuse and a history of domestic violence that she wished to discuss with Dr. Barclay. AR 512. In March 2011, Dr. Barclay completed a medical source statement regarding Plaintiff. In that statement, she described Plaintiff as "agitated," said that she displayed "poor insight and judgement [sic]," had moderately impaired concentration, and mildly impaired memory. AR 471. She also described mildly impaired judgment.[6] AR 472. Ultimately, she found that Plaintiff:

- Had a poor ability to understand, remember, and carry out complex instructions;[7]

---

[5] Plaintiff saw Dr. Barclay at the Oildale Community Health Center. Her treatment team at the Health Center appears to have included Dr. Barclay, a nurse practitioner named Barbara Mouser, and a physician who supervised Mouser (and whose name does not appear in the medical records). AR 73-75. Mouser appears to have seen Plaintiff independently on several occasions and even completed a medical source statement, but the ALJ gave her little weight because she was not an acceptable medical source and her findings were not consistent with the record. AR 20. Plaintiff does not challenge this appraisal. It is unclear whether Dr. Barclay relied to any extent on Mouser's notes in completing her medical source statement.

[6] Mouser appears to have disagreed with this assessment; she described Plaintiff's judgment as "intact" and noted that "all areas improved –meds." AR 468.

[7] The form Dr. Barclay used defined "poor" as: "The evidence supports the conclusion that the individual cannot

- Had a fair ability to understand, remember, and carry out simple instructions;
- Had a poor ability to maintain concentration, attention, and persistence;
- Had a poor ability to perform activities within a schedule and maintain regular attendance;
- Had a poor ability to complete a normal workday and workweek without interruptions from psychologically based symptoms; and,
- Had a poor ability to respond appropriately to changes in a work setting.

AR 473.

Over the course of the next four months, Dr. Barclay completed several short clinical progress notes. The notes relayed information that Plaintiff was telling her, including a report in March 2011 that Plaintiff had been suffering increased pain because of her multiple sclerosis and crying because of the lack of treatment. AR 501. Over the course of the treatment, Plaintiff's symptoms appeared to improve; Dr. Barclay noted in April 2011 that Plaintiff showed no symptoms of her sexual abuse and was "doing well with managing her depression." AR 490. Despite the fact that she still claimed to be suffering from pain, she maintained a "positive attitude." AR 490. In later visits, she reported feelings of anxiety because of surgery she was scheduled to undergo. AR 486.

Plaintiff contends that the ALJ failed to give specific and legitimate reasons for rejecting Dr. Barclay's opinion. In particular, Plaintiff argues that: (1) Dr. Barclay's opinion was consistent with those of Drs. Hawkins and Zhang and thus must be given controlling weight; and (2) the ALJ failed to provide specific and legitimate reasons for giving Dr. Barclay's opinion little weight.[8] Plaintiff's Opening Brief ("Opening Brief") 13:16-21, 15:5-13, ECF No. 15.

---

usefully perform or sustain the activity." AR 473. Poor was the lowest of four ratings.

[8] Plaintiff's argument here is not entirely clear. Although the focus of the argument appears to be that the ALJ erroneously rejected Dr. Barclay's assessment, Plaintiff also takes exception to the ALJ's treatment of Drs. Hawkins and Zhang (*e.g.*, "the ALJ fails to account for the fact that Dr. Barclay's assessment is consistent with consulting doctors. Thus, the ALJ did not articulate specific objective findings or otherwise present any legitimate reasons for rejecting the opinions of Drs. Kimball [sic] and Zhang"). Opening Brief 15:8-12. The argument seems to be that, because Plaintiff believes that Dr. Barclay's opinion was consistent with those of Drs. Hawkins and Zhang, the only way to reject Dr. Barclay's opinion would have been to reject those of the other two, as well. But this interpretation overcomplicates the argument: an ALJ may reject a treating physician's opinion whether or not it is consistent with the medical record. If the opinion is not contradicted by the medical record, however, the ALJ must provide "clear and convincing reasons" for doing so. *Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th Cir. 1995). If the opinion is contradicted, the ALJ must only provide "specific, legitimate reasons for doing so that are based on substantial evidence in the record." *Id*. Thus, the ALJ need not have rejected the opinions of Drs. Hawkins and Zhang to reject

The Commissioner argues that the ALJ provided specific and legitimate reasons for his rejection of Dr. Hirokawa's opinion. Specifically, the Commissioner argues that: (1) Dr. Barclay's opinion was inconsistent with those of Drs. Hawkins, Zhang, and Mohammed; and (2) Dr. Barclay's opinion was properly given little weight because it is internally inconsistent. Defendant's Opposition Brief ("Opposition Brief") 8:10-9:11, 9:12-10:22, ECF No. 18. Finally, the Commissioner urges that deference be given to the ALJ's opinion and notes that the question for review is not "whether there is substantial evidence that could support a finding of disability, but whether there is substantial evidence to support the commissioner's actual finding that claimant is not disabled." Opposition Brief 10:23-25, *quoting Jamerson v. Chater*, 112 F.3d 1064, 1067 (9th Cir. 1997). In other words, the issue is not whether or not the evidence could plausibly suggest that Dr. Barclay's opinion is accurate—it is only whether or not the ALJ provided appropriate reasons for giving her opinion little weight that is subject to review. *Id.* at 11:3-11, *citing Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012) ("Even when the evidence is susceptible to more than one rational interpretation, we must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record").

### ii. Kimball Hawkins, Ph.D.

Dr. Hawkins conducted a consultative examination of Plaintiff on January 10, 2011. AR 431. She completed a psychological evaluation and at least four independent tests to assess Plaintiff's mental functioning and condition. AR 431. After conducting a brief mental status examination, Dr. Hawkins concluded that Plaintiff demonstrated intact concentration abilities, mild impairment in memory, an anxious mood, and intact judgment. AR 432-433. She performed poorly on several tests of intellectual and memory functioning. AR 434. Dr. Hawkins concluded that the Plaintiff had:

- Marginal to poor abilities in understanding, remembering, and carrying out complex instructions;
- Adequate abilities in understanding, remembering, and carrying out simple instructions;
- Adequate abilities to maintain concentration and attention, with the caveat that her

---

Dr. Barclay's opinion, even if all three opinions were consistent.

7

- ability to maintain attention could fluctuate "based on how she feels";
- Adequate abilities to work within a schedule and maintain regular attendance "when she is feeling well";
- Poor ability to complete a normal workday and workweek without interruptions from psychologically based symptoms "because of adjustment related depression";
- Adequate ability to respond appropriately to changes in the work setting; and
- Adequate ability to manage her own money.

AR 434-435. The ALJ gave Dr. Hawkins's opinion little weight based on the restrictive findings and inconsistencies with the Plaintiff's record. AR 19. Although Dr. Hawkins's opinion was given little weight, the ALJ appears to have adjusted Plaintiff's RFC to incorporate the identified limitations by limiting work to "low stress occupations with infrequent changes in work or setting, and requiring little decision making." AR 18.

### iii. J.K. Zhang, Psy.D.

Dr. Zhang conducted a consultative examination of Plaintiff on October 20, 2011. AR 633. Among other things, he conducted a test of memory malingering and determined that the "scores suggest possible malingering." AR 635. He concluded that Plaintiff demonstrated:

- Moderate limitations in maintaining concentration, attention, and persistence in a normal workday;
- Mild to moderate limitations in understanding, remembering, and carrying out complex instructions;
- No limitations in understanding, remembering, and carrying out simple instructions;
- Moderate limitations in interacting appropriately with the public, supervisors and coworkers;
- Marked limitations in adapting to stresses common to the work environment;
- Moderate limitations in performing activities within a schedule and maintaining regular attendance.

AR 635.

The ALJ afforded Dr. Zhang's opinion regarding malingering significant weight because it was consistent with Plaintiff's history of "drug seeking behavior," but little weight with respect to the severity of her impairments because the opinion was "too restrictive and is inconsistent

with the claimant's record as a whole." AR 19. As with Dr. Hawkins's opinion, the ALJ appears to have adjusted the RFC to incorporate Dr. Zhang's opinion, despite giving it little weight. AR 160 ("I specifically included this in light of Dr. Zhang's report, including his opinion that she would have difficulty responding to common stresses").

### iv.  Robert Paxton, M.D.

Dr. Paxton, a reviewing physician, completed a Mental Residual Functional Capacity Assessment on February 16, 2011. AR 436-438. After a review of Plaintiff's records, he determined that Plaintiff had:

- Moderate limitations in the ability to understand and remember detailed instructions; and

- Moderate limitations in the ability to carry out detailed instructions.

AR 436. He also concluded that Plaintiff had the ability to:

- Understand and remember simple vocational directives;

- Sustain focus for two hour increments and work at a competitive pace without additional supervision;

- Interact appropriately with co-workers and the public;

- Adhere to a routine schedule, respond to hazards, and tolerate the stress inherent in competitive employment.

AR 438. Neither of the parties discusses Dr. Paxton, nor did the ALJ discuss his findings in his decision.

### v.  Shakil Mohammed, M.D., Ph.D.

Dr. Mohammed, a reviewing psychiatrist, testified at the hearing and was subject to a lengthy cross-examination by Plaintiff.[9] AR 72-98. Dr. Mohammed noted during his review of the documents that the medical source statements by Barbara Mouser and Dr. Barclay were internally inconsistent. AR 77-78. He questioned Dr. Barclay's diagnosis of post-traumatic stress

---

[9] Plaintiff's counsel, the ALJ, and Dr. Mohammed appear to have had a lengthy discussion in the midst of Dr. Mohammed's testimony concerning various alternate diagnoses that Plaintiff believes would have been appropriate. The discussion concluded with the ALJ reminding Plaintiff's counsel not to argue or "cast aspersions" about Dr. Mohammed and a request that the ALJ consider ordering a new consultative examination to consider the alternate diagnoses. AR 97. No additional examinations were ordered before a final decision was rendered. The parties do not raise the requested consulting examination as an issue here.

disorder based on the Plaintiff's demonstrated symptoms. AR 79. In terms of limitations, Dr. Mohammed concluded that Plaintiff would be able to perform tasks "requiring simple instructions such as one to three steps, simple repetitive tasks." AR 80. He recommended "frequent contact with the supervisors, coworkers, and public" and suggested a "low stress job" was appropriate. AR 80. Given these restrictions, he stated that Plaintiff would be "be able to stay on task." AR 80.

**B.  Legal Standards**

Cases in this circuit distinguish among the opinions of three types of physicians: (1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant (non-examining physicians). As a general rule, more weight should be given to the opinion of a treating source than to the opinion of doctors who do not treat the claimant. *Winans v. Bowen*, 853 F.2d 643, 647 (9th Cir. 1987). However, a "treating physician's opinion is not . . . necessarily conclusive as to either a physical condition or the ultimate issue of disability." *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989) ("the ALJ need not accept a treating physician's opinion which is 'brief and conclusionary in form with little in the way of clinical findings to support [its] conclusion").

When the treating doctor's opinion is not contradicted by another doctor, it can be rejected for "clear and convincing" reasons. *Baxter v. Sullivan*, 923 F.2d 1391, 1396 (9th Cir. 1991). If the treating doctor's opinion is contradicted by another doctor, the Commissioner may reject it by providing "specific and legitimate reasons" supported by substantial evidence in the record for the rejection. *Murray v. Heckler*, 722 F.2d 499, 502 (9th Cir. 1983).

The opinion of a non-examining physician cannot, by itself, constitute substantial evidence that justifies the rejection of the opinion of either an examining physician or a treating physician. *Pitzer v. Sullivan*, 908 F.2d 502, 506 n. 4 (9th Cir. 1990); *Gallant v. Heckler*, 753 F.2d 1456 (9th Cir. 1984). It can, however, *support* the rejection of the opinion of a treating or examining physician. *See, e.g., Magallanes*, 881 F.2d at 751-55; *Andrews v. Shalala*, 53 F.3d 1035, 1043 (9th Cir. 1995); *Roberts v. Shalala*, 66 F.3d 179 (9th Cir. 1995). For example, in *Magallanes*, "the ALJ did not rely on [the non-examining physician's] testimony alone to reject the opinions of Magallanes's treating physicians . . . ." *Magallanes*, 881 F.2d at 752. Rather,

there was other evidence that supported the ALJ's decision: the ALJ also relied on laboratory test results, contrary reports from examining physicians, and testimony from the claimant that conflicted with her treating physician's opinion. *Id.* at 751-52. Thus, the opinions of non-treating or non-examining physicians may serve as substantial evidence when the opinions are consistent with independent clinical findings or other evidence in the record. *Thomas v. Barnhart*, 278 F. 3d 947, 957 (9th Cir. 2002) ("The opinions of non-treating or non-examining physicians may also serve as substantial evidence when the opinions are consistent with independent clinical findings or other evidence in the record"). If, however, "the opinion of a nontreating source is based on independent clinical findings that differ from those of the treating physician, the opinion of the nontreating source may itself be substantial evidence." *Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th Cir. 1995).

Where medical reports are inconclusive, "questions of credibility and resolution of conflicts in the testimony are functions solely of the Secretary." *Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982) *quoting Waters v. Gardner*, 452 F.2d 855, 858 n. 7 (9th Cir.1971). Likewise, conflicts in medical opinions within the record are "solely the province of the ALJ to resolve." *Andrews*, 53 F.3d at 1041.

### C. The ALJ's Evaluation of the Medical Evidence

The ALJ evaluated Plaintiff's impairments and found that Plaintiff had the residual functional capacity to perform light work in all postural activities except that she could not climb ladders, ropes, or scaffolds, and could not work in unprotected heights or around hazardous machinery. AR 16. She could, however, engage in simple repetitive one to three step tasks, have frequent interactions with coworkers, supervisors, and the public, and work in a low stress occupation characterized by few changes in work or setting. AR 16. He also determined that although the "medically determinable impairments could reasonably be expected to cause the alleged symptoms," Plaintiff's testimony regarding the "intensity, persistence and limiting effects of these symptoms [is] not credible." AR 17.

In particular, he found, that Plaintiff had: (1) demonstrated significant prescription drug seeking behavior; (2) was once admitted to the emergency room and reported difficulty walking

but appeared to have no difficulty walking to the restroom and demanded narcotic pain medication; (3) changed physicians after one refused to provide her with a diagnosis of multiple sclerosis; (4) provided deceptive testimony at the hearing; (5) exaggerated symptoms, including the use of a wheelchair without any objective justification; (6) evinced the existence of subjective symptoms that were not objectively justified; and (7) promised to produce additional records at the hearing but never provided any records. AR 18-19. Plaintiff does not challenge the ALJ's assessment of her credibility.

### i. *Dr. Barclay's findings are contradicted by the record; the ALJ need only have provided specific and legitimate reasons to give her opinion little weight*

Dr. Barclay ultimately found that Plaintiff could not usefully perform or sustain:

- The ability to maintain concentration, attention, and persistence;
- The ability to perform activities within a schedule and maintain regular attendance;
- The ability to respond appropriately to changes in a work setting.

AR 473. These findings are contradicted by Drs. Hawkins (who found that Plaintiff had adequate abilities to perform these activities, AR 434-435) and Zhang (who found that Plaintiff had moderate limitations with respect to her ability to maintain concentration and regular attendance, AR 635).[10] Dr. Barclay also found that Plaintiff could not usefully perform or sustain the ability to complete a normal workday and workweek. This finding is contradicted by Drs. Paxton (AR 438) and Mohammed (AR 80). Consequently, the ALJ need only provide specific and legitimate reasons supported by substantial evidence to reject Dr. Barclay's findings. *Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002).

### ii. *The ALJ's reasons are appropriate and supported by substantial evidence*

The ALJ discussed Plaintiff's mental impairments and Dr. Barclay's opinion in two instances within his decision. In the first instance, the ALJ describes the records supporting Plaintiff's mental limitations as "sparse and contain[ing] only self reported diagnoses rather than

---

[10] Notably, both Drs. Hawkins and Zhang found that Plaintiff was capable of understanding and completing simple tasks. AR 434, 635.

12

objective medical findings." AR 18. He also notes that the record "does not show a history of repeated treatment for mental health, nor does it indicate she has seen a physiatrist [sic] or other specialist to address these allegedly disabling conditions." AR 18. In the second instance, he dismisses Dr. Barclay's opinion because "it is not consistent with the claimant's overall record." AR 20.

It appears that the ALJ thus gave Dr. Barclay's opinion little weight because: (1) the opinion was based on sparse records and subjective self-reports by the Plaintiff; (2) Plaintiff has no history of repeated treatment for mental health; and (3) the opinion is inconsistent with the record. It is unclear whether (3) refers to the entire administrative record or the entire record that Dr. Barclay had access to (*e.g.*, the record maintained by her treating team at the Oildale Community Health Center).

Reason (1) is a specific and legitimate reason for giving a treating source's opinion less weight and appears to be supported by substantial evidence. *Turner v. Comm'r of Soc. Sec.*, 613 F.3d 1217, 1223 (9th Cir. 2010) (ALJ "reasonably rejected" physician's opinion where it was "based almost entirely on the claimant's self-reporting"); *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005) ("an ALJ need not accept the opinion of a doctor if that opinion is brief, conclusory, and inadequately supported by clinical findings"). Dr. Barclay's notes regarding her visits with Plaintiff are relatively sparse and do not indicate the performance of any objective tests (*e.g.*, AR 501 ("She said she has been crying. . . [s]he reported that she has increased pain. . . [s]he stated that it seems so far away. . . ")). While Dr. Barclay's notes do indicate that she diagnosed Plaintiff with post-traumatic stress disorder and major depressive disorder, there is little in the notes to indicate the breadth of limitations she ultimately describes in her medical source statement (there are approximately six single-sided pages of records by Dr. Barclay, each with little or no narrative description—the records are largely lists of medications the Plaintiff is taking). Dr. Mohammed agreed with this assessment—he noted at the hearing that there was a severe lack of documentation on Dr. Barclay's part, making her ultimate diagnoses "somewhat questionable." AR 79. Given the noted paucity of treatment records and the unchallenged finding that Plaintiff lacked credibility, it was reasonable for the ALJ to give Dr. Barclay's ultimate

opinion little weight.

Plaintiff's argument that there is evidence in the record consistent with Dr. Barclay's opinion is not persuasive. Opening Brief 14:10-18. While it is true that Barbara Mouser, the nurse practitioner at the Oildale Community Health Center, appears to have largely agreed with Dr. Barclay, the ALJ found that Mouser's opinion was entitled to little weight because she was not an acceptable medical source. Mouser's opinion, like Barclay's, was also contradicted by other, more credible sources. The decision to weigh Mouser's opinion lower than that of more acceptable medical sources was squarely within the power of the ALJ to make. *Andrews*, 53 F.3d at 1039-40 ("The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities. We must uphold the ALJ's decision where the evidence is susceptible to more than one rational interpretation").

Reasons (2) and (3) are also both specific and legitimate reasons to give little weight to an opinion by a treating source. *Rollins v. Massanari*, 261 F.3d 853, 856 (9th Cir. 2001); *Tomasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008) (upholding rejection of treating physician's opinion where "ultimate conclusions . . . did not mesh with her objective data or history"). While (2) does not appear to be supported by substantial evidence—Plaintiff did, in fact, seek treatment from Dr. Barclay and Mouser—(3), that Dr. Barclay's opinion is internally inconsistent and inconsistent with the overall record, is supported by substantial evidence.

As indicated above, Plaintiff appears to have done well under Dr. Barclay's care. In one of the few notes containing a description of Plaintiff's condition, Dr. Barclay noted that Plaintiff had "shown a reduction in [symptoms]," and was "doing well with managing her depression." AR 490. Indeed, Mouser's notes from the same day that Dr. Barclay completed her medical source statement describe Plaintiff as "interactive . . . enthusiastic" and "euthymic." AR 507. Similarly, Dr. Mohammed testified that Dr. Barclay's medical source statement was inconsistent with her other notes. AR 93-94. It also appears to have been inconsistent with the overall record. As noted above, Drs. Mohammed, Paxton, Hawkins, and Zhang all disagreed with parts of Dr. Barclay's opinion.[11]

---

[11] Plaintiff briefly argues that it was inappropriate for the ALJ to give differing amounts of weight to different

**D. The ALJ's Duty to Develop the Record**

### *i. Factual Background*

Plaintiff's second argument that the ALJ's decision should be remanded turns on the ALJ's duty to develop the administrative record and arises out of an unusual exchange that occurred between Plaintiff's hearing counsel (who is also representing Plaintiff in this action) and the ALJ.[12] After the hearing (but before the ALJ rendered his decision), Plaintiff submitted a letter to the ALJ. AR 218. The letter asked the ALJ to pose an interrogatory to the vocational expert who had testified at the hearing. Specifically, the interrogatory asked the vocational expert to render an opinion based on the limitations described by Dr. Zhang in his consultative examination. It is unclear why Plaintiff did not pose this question to the expert at hearing.

The vocational expert, responding to the interrogatory, opined that Dr. Zhang did not provide definitions for the terms he used in describing Plaintiff's limitations. In particular, Dr. Zhang did not define what he meant when he said that Plaintiff had "marked limitations" in "completing a normal workday or workweek." AR 219. The vocational expert was confused, noting that this limitation seemed inconsistent with Dr. Zhang's other findings. AR 219. The expert hypothesized, however, that if "marked limitation" was defined as a "substantial loss of ability," Dr. Zhang's "prescribed limitations would appear to eliminate work for this claimant." AR 219. The expert noted the definition of the term was "not a vocational question" and declined to define "marked." He further wrote that "I cannot render an opinion with the facts at hand." AR 219. Plaintiff then submitted a second letter to the ALJ, asking him to ask the expert to "assume that the term 'Markedly' used by Dr. Zhang, would refer to 'substantial loss'" and reiterating his interrogatory. AR 220.

The ALJ declined to forward any further correspondence to the expert, saying that: (1) the

---

portions of each source's opinion. Opening Brief 15:13-22. But Plaintiff's position—that the ALJ must adopt an "all or nothing" approach with respect to expert opinions—is unsupported by the case law. It the ALJ's job to evaluate the evidence and resolve factual conflicts in the record. In many cases, that includes weighing the evidence and assigning value to statements made in the record. *Russell v. Bowen*, 856 F.2d 81, 83 (9th Cir. 1988) ("It is not necessary to agree with everything an expert witness says in order to hold that his testimony contains 'substantial evidence').

[12] The parties do not lay out the facts regarding this issue in their briefs. The Court has thus endeavored to place the events in the order they occurred based on the administrative record.

RFC he had formulated for the expert (and asked him about at the hearing) had already incorporated the functional limitations that Dr. Zhang had found; and (2) there was no further need to address the issue via "this interminable chain of letters." AR 160. Plaintiff's counsel took umbrage with the ALJ's dismissal of his concerns and responded with a four page letter arguing that the ALJ was "inappropriately critiquing me" and requesting that an interrogatory be posed to Dr. Zhang asking for clarification of the term "marked limitation."[13] AR 221-224. No such interrogatory was posed to Dr. Zhang.

Plaintiff now argues that the ALJ had a duty to further develop the record by posing the requested interrogatory to Dr. Zhang so that (presumably) Plaintiff may pose a further interrogatory to the vocational expert using Dr. Zhang's definition. Opening Brief 18:12-22. The Commissioner responds that there was no duty to further develop the record because: (1) an ALJ is not required to include limitations in a hypothetical to a vocational expert that are not supported by the evidence; and (2) there was no duty to develop the record because the ALJ had appropriately discounted the "marked limitation" in Dr. Zhang's opinion.

### ii. Analysis

An ALJ has a duty to "fully and fairly develop the record and to assure that the claimant's interests are considered." *Tonapetyan v. Halter*, 242 F.3d 1144, 1150 (9th Cir. 2001). This duty is triggered when there is "[a]mbiguous evidence" or on "the ALJ's own finding that the record is inadequate to allow for proper evaluation of the evidence." *Id*. Once the duty is triggered, the ALJ must "conduct an appropriate inquiry," which can include "subpoenaing the claimant's physicians, submitting questions to the claimant's physicians, continuing the hearing, or keeping the record open after the hearing to allow supplementation of the record." *Id.*

Such an inquiry need not be all-encompassing, however. An ALJ "does not have to exhaust every possible line of inquiry in an attempt to pursue every potential line of questioning."

---

[13] The tone adopted by both the ALJ and Plaintiff's counsel in their correspondence is disappointing. Social Security hearings are not intended to be adversarial and it is unfortunate that the parties here chose to treat it as such. *Flaherty v. Astrue*, 515 F.3d 1067, 1071 (10th Cir. 2007). While the unnecessarily snide tone of the letters does not weigh into the Court's consideration of this issue, the Court reminds both parties that the judicial system "relies on attorneys to treat each other with a high degree of civility and respect." *Ahanchian v. Xenon Pictures, Inc.*, 624 F.3d 1253, 1262 (9th Cir. 2010). The parties would do well to remember this in future interactions.

*Hawkins v. Chater*, 113 F.3d 1162, 1168 (10th Cir. 1997) ("The standard is one of reasonable good judgment"). Indeed, an ALJ is only required to conduct further inquiries with a treating or consulting physician "if the medical records presented to him do not give sufficient medical evidence to determine whether the claimant is disabled." *Johnson v. Astrue*, 627 F.3d 316, 319-20 (8th Cir. 2010). The duty to develop the record is typically triggered where, for example, a claimant's medical records are incomplete or there is an "issue sought to be developed which, on its face, must be substantial." *Flaherty v. Astrue*, 515 F.3d 1067, 1071 (10th Cir. 2007).

Here, the duty to develop the record does not appear to have been triggered. While Plaintiff is correct that the vocational expert expressed uncertainty as to the meaning of a term in Dr. Zhang's report, the ALJ determined that that portion of Dr. Zhang's report was to be accorded little weight. AR 19. The ALJ also incorporated Dr. Zhang's opinion, to the extent he gave it any weight, into the RFC he posed to the vocational expert in a hypothetical. AR 160. Similarly, the Commissioner correctly argues that an ALJ is not required to include limitations in a hypothetical question to a vocational expert where those limitations are not supported by the evidence. *Ghanim v. Colvin*, 763 F.3d 1154, 1166 (9th Cir. 2014) ("An ALJ may rely on a vocational expert's testimony that is based on a hypothetical that 'contain[s] all of the limitations that the ALJ found credible and supported by substantial evidence in the record'"). The ALJ found that Dr. Zhang's finding of "marked limitations" was not supported by the record based on input from other experts. Thus, the use of the term "marked limitations" did not create a material ambiguity in the record.

Even if there was a failure to develop the record, Plaintiff has not demonstrated any prejudice as a result of the failure. Given the ALJ's assessment of Dr. Zhang's opinion, any clarification of Dr. Zhang's report would have been "'inconsequential to the ultimate nondisability determination' and in the context of the record as a whole." *Molina v. Astrue*, 674 F.3d 1104, 1122 (9th Cir. 2012). Absent any showing that further development of the record "could and would have adduced evidence that might have altered the result," there is no prejudice and thus no reason to remand the decision for further consideration. *Brock v. Chater*, 84 F.3d 726, 728-29 (5th Cir. 1996) ("We will not reverse the decision of an ALJ for lack of substantial

evidence where the claimant makes no showing that he was prejudiced in any way by the deficiencies he alleges").

## VI. CONCLUSION

Based on the foregoing, the Court finds that the ALJ's decision is supported by substantial evidence in the record as a whole and is based on proper legal standards. Accordingly, this Court DENIES Plaintiff's appeal from the administrative decision of the Commissioner of Social Security. The Clerk of this Court is DIRECTED to enter judgment in favor of Defendant, Carolyn W. Colvin, and Commissioner of Social Security and against Plaintiff, Bryanna Clegg.

IT IS SO ORDERED.

Dated: **March 25, 2015**         /s/ Gary S. Austin
                                  UNITED STATES MAGISTRATE JUDGE